**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Ronald Sheffey,

                    Petitioner,

v.

William Hutchings[1], et al.,

                    Respondents.

Case No. 2:21-cv-01341-APG-VCF

**ORDER**

(ECF No. 3)

Petitioner Ronald Sheffey, a Nevada prisoner, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 3.  For the reasons discussed below, I deny Sheffey's habeas petition, deny him a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

## I.    Background[2]

Sheffey's convictions arose from events that took place in Clark County, Nevada in the fall of 2016. ECF No. 18-1 at 6-8.  On September 29, 2016, an undercover police officer bought methamphetamine from a woman known as Brittany at a McDonald's parking lot. *Id.* at 45-46, 54.  Following the transaction, Brittany met Sheffey at a nearby Sinclair gas station. *Id.* at 77-78. The two left the gas station and entered a residence. *Id.* at 78.  At that point, police surveillance ended. *Id.*

Police officers arranged to buy methamphetamine from Brittany again on November 4,

---

[1] It appears from the state corrections department's inmate locator page that Sheffey is incarcerated at Northern Nevada Correctional Center. *See* https://ofdsearch.doc.nv.gov/form.php (retrieved August 2022 under identification number 86770).  The department's website reflects that Kyle Olsen is the warden of that facility. *See* https://doc.nv.gov/Facilities/NNCC_Facility/ (retrieved August 2022).  At the end of this order, I direct the Clerk of the Court to substitute Sheffey's current immediate physical custodian, Kyle Olsen, as a respondent in place of respondent Hutchings under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] I make no credibility findings or factual findings regarding the truth or falsity of evidence or statements of fact in the state court.  I summarize the factual assertions solely as background to the issues presented in the case, and I do not summarize all such material.  No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me.  Any absence of mention of a specific piece of evidence or category of evidence does not signify that I have overlooked the evidence in considering Sheffey's claim.

2016. *Id.* at 44-45.  On that day, police observed Sheffey leave the same residence he entered on September 29. *Id.* at 13-14.  He met Brittany and another man, and they began walking together. *Id.* at 14-15.  Eventually, Sheffey and the man walked to the Sinclair gas station, and Brittany went to the McDonald's where the controlled purchase was scheduled to take place. *Id.* at 16, 46. Following the purchase, Brittany was taken into custody. *Id.* at 16.  Two police officers then entered the Sinclair gas station and detained Sheffey. *Id.* at 16-17.  A search of Sheffey's person uncovered keys and a wallet with "a large amount of money inside." *Id.* at 17.

After detaining Sheffey, police officers headed to the residence to conduct a "knock and talk." *Id.* at 82-83.  The officers knocked on the door, and Sheffey's mother answered.  *Id.* at 83. She told the officers she owned the house and Sheffey was her son. *Id.*  The officers explained that they were "investigating a crime related to drug sales" and asked for permission to search the "common areas" of the house. *Id.* at 83-84.  Ms. Sheffey allowed the officers to search the common areas, but noted she did not have access to "a locked bedroom upstairs that belonged to her son." *Id.*  Ms. Sheffey also explained that "she ha[d] access to the garage, although she's not there often, because there's a car there that belonged to" her son. *Id.* at 88-89.

Officers searched the garage and found a Crown Royal bag containing 83.3 grams of methamphetamine, 1.6 grams of heroin, and a digital scale. *Id.* at 33-35, 89.  Officers obtained a warrant to search Sheffey's bedroom. *Id.* at 89-90.  Using one of the keys recovered from Sheffey, officers unlocked the door and conducted a search. *Id.* at 48-49.  They found 373.7 grams of methamphetamine, 7.3 grams of heroin, and a scale. *Id.* at 50-52, 133-34.

Following a jury trial, Sheffey was convicted of (i) one count of trafficking in a controlled substance (28 grams or more) and (ii) one count of trafficking in a controlled substance (4 grams or more but less than 14 grams). ECF No. 19-8.  Sheffey was sentenced to concurrent sentences of life with parole eligibility after 10 years for the first count, and 48 months in prison with parole eligibility after 12 months for the second count. *Id.*

Sheffey filed a notice of appeal but subsequently withdrew his appeal. ECF No. 19-11; ECF No. 19-18.  He then sought habeas relief in Nevada state court. ECF No. 19-9; ECF No. 21-19.  Following an evidentiary hearing, the state district court denied Sheffey's petition. ECF No.

22-6; ECF No. 22-15.  The Nevada Court of Appeals affirmed the denial of the petition. ECF No. 22-26.

## II.    Legal Standard

### A.  Review under the Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as "difficult to meet" and a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### B.  Standard for Evaluating an Ineffective-Assistance-of-Counsel Claim

A petitioner asserting an ineffective-assistance-of-counsel claim must demonstrate that (i) counsel's "representation fell below an objective standard of reasonableness," and (ii) counsel's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  It is the petitioner's burden to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for the petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing that the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05.  *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

III.    **Discussion**

A.  **Ground 1**

In Ground 1, Sheffey claims trial counsel provided ineffective assistance because she failed to "contest the illegal search of the garage." ECF No. 3 at 4.  Sheffey argues that, because he was "the primary user of the garage," his mother "could not provide valid consent to search that specific area." *Id.*  Thus, according to Sheffey, if counsel had "contested the search of the garage pretrial as based on invalid third-party consent, the evidence located in the garage would have been suppressed." *Id.*  Sheffey contends suppression of this evidence would have invalidated the search warrant for his bedroom, which was based on "discovery of items contained within the garage." *Id.*

In affirming the denial of Sheffey's state habeas petition, the Nevada Court of Appeals held:

> To demonstrate ineffective assistance of trial counsel, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).  Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 687, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).  We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> . . . .
>
> Fourth, Sheffey claimed counsel was ineffective for failing to challenge the search of the garage and his bedroom.  Sheffey claimed his mother did not have the authority to give permission to search the garage because the garage was used mostly by Sheffey.  Further, Sheffey claimed that the probable cause alleged to search his bedroom was predicated on the "illegal" search of the garage and, therefore, any evidence found in the bedroom should have been suppressed.
>
> "Actual authority is proved (1) where defendant and a third party have mutual use of and joint access to or control over the property at issue, or (2) where defendant assumes the risk that the third party might consent to a search of the property." *Lastine v. State*, 134 Nev. 538, 542, 429 P.3d 942, 947 (Ct. App. 2019).  Further, under the apparent authority doctrine, a search is valid if the officer reasonably believes that the third party has actual authority to consent. *See id.* at 544-54, 429 P.3d at 949.
>
> The trial testimony demonstrated that Sheffey's mother was the owner of the home and, while Sheffey was the majority user of the garage, she still had access

to the garage. Sheffey's mother, therefore, had the actual authority to permit the officers to enter the garage or, alternatively, the officers reasonably believed she did. Thus, Sheffey failed to demonstrate the search of the garage or the resulting search of the bedroom was illegal. Because the search was not illegal, Sheffey failed to demonstrate a reasonable probability of a different outcome at trial had counsel filed the motion, and counsel is not deficient for failing to file futile motions. *Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978). Therefore, we conclude the district court did not err by denying this claim. [FN 1]

> [FN 1] The district court conducted an evidentiary hearing on only some of Sheffey's claims. Sheffey claims on appeal that the district court should have conducted an evidentiary hearing on this claim. For the reasons stated above, we conclude Sheffey failed to demonstrate he was entitled to an evidentiary hearing.

ECF No. 22-26 at 1-4.

The Nevada Court of Appeals' rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*. To succeed on a claim that trial counsel rendered ineffective assistance by failing to file a motion to suppress, Sheffey must demonstrate the motion has merit. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). The Nevada Court of Appeals reasonably concluded that a motion to suppress would be meritless because there was no basis to challenge the search of the garage or bedroom.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The prohibition on warrantless searches of a home "does not apply, however, [if] voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). "Common authority" rests on "mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)). In determining whether a third party has "common

authority," courts also consider whether others in the home have assumed the risk that the third party might allow the search. *Matlock*, 415 U.S. at 171 n.7.

Even if a third party lacks actual authority to consent to a search, she may have apparent authority to consent. "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Arreguin*, 735 F.3d 1168, 1175 (9th Cir. 2013) (internal quotation marks and citation omitted). "Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances." *Id.* (internal quotation marks and citation omitted). In evaluating whether an officer's belief was objectively reasonable, courts look to "the facts available to the officer at the moment." *Rodriguez*, 497 U.S. at 188.

Testimony at Sheffey's trial established that his mother owned and lived in the house where the search was conducted. ECF No. 18-1 at 83. Following Sheffey's arrest at the gas station, Ms. Sheffey agreed to allow officers to search the "common areas" of the house, including the garage. *Id.* at 83-84. She told the officers that "she ha[d] access to the garage, although she's not there often, because there's a car there that belonged to" her son. *Id.* at 88-89. Because Ms. Sheffey had access to—and at least occasionally used—the garage, she had "common authority" over it. *See Rodriguez*, 497 U.S. at 181 (noting that "common authority" rests on "mutual use of the property by persons generally having joint access or control for most purposes"). Faced with this evidence, the Nevada Court of Appeals concluded that any motion to suppress was futile because (i) Ms. Sheffey had actual or apparent authority to consent to a search of the garage, and thus (ii) neither the search of the garage nor the resulting search of the bedroom was unlawful. This ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 786-87.

Sheffey contends, as he did in the state post-conviction proceedings, that his mother could not consent to a search of the garage because he "was the primary user of the garage." ECF No. 3 at 4. This argument is meritless. As noted above, consent from a third party is valid if that

person has "common authority" over the premises, meaning that she has "joint access [to] or control [of the property] for most purposes." *Rodriguez*, 497 U.S. at 181. Ms. Sheffey had "common authority" over the garage because she had "joint access" to it "for most purposes." *Id.* No Supreme Court case law suggests—much less clearly establishes—that Ms. Sheffey lacked authority to consent to a search of the garage because her son spent more time there than she did. *Cf. United States v. Duran*, 957 F.2d 499, 505 (7th Cir. 1992) (holding that defendant's spouse "had actual authority to consent to a search of the farmhouse" on their property although spouse "neither used the old farmhouse nor left any of her personal effects there").

The Nevada Court of Appeals reasonably concluded that Sheffey's trial counsel was not ineffective for failing to challenge the search of the garage or the subsequent search of the bedroom. Thus, Sheffey is not entitled to relief on Ground 1.

## B.  Ground 2

In Ground 2, Sheffey claims trial counsel rendered ineffective assistance because she failed to conduct an adequate investigation. ECF No. 3 at 9-13. Specifically, Sheffey contends counsel was deficient because she did not (i) locate and interview his teenage children, "who witnessed the initial search and the detectives['] encounter with his mother"; (ii) locate and interview "the witnesses in the [Sinclair] gas station at the time he was detained"; (iii) collect surveillance video from the gas station; or (iv) investigate the source of the money found on his person. *Id.*

In affirming the denial of Sheffey's state habeas petition, the Nevada Court of Appeals held:

> First, Sheffey claimed counsel failed to interview his children and the witnesses at the gas station. A petitioner claiming counsel did not conduct an adequate investigation must show how a better investigation would have made a more favorable outcome probable. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Sheffey failed to allege, or present evidence at the evidentiary hearing, to demonstrate what testimony these witnesses would have given or how their testimony would have affected the outcome of the trial. Therefore, Sheffey failed to demonstrate counsel was deficient or resulting prejudice. Accordingly, we conclude the district court did not err by denying this claim.

> Second, Sheffey claimed counsel should have obtained the video surveillance tape from the gas station. At the evidentiary hearing, counsel testified she subpoenaed the video surveillance tape but was unable to obtain the video.

Sheffey failed to demonstrate what further actions counsel could have taken to recover the video surveillance tape. Further, Sheffey failed to allege what he believed the video surveillance tape would show or how the tape would have helped him at trial. Therefore, Sheffey failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial. Accordingly, we conclude the district court did not err by denying this claim.

Third, Sheffey claimed counsel should have investigated whether the money on his person was gambling winnings and not drug money. Sheffey claimed that, had counsel investigated this issue and presented evidence that the money was actually gambling winnings, the State would not have been able to so extensively argue about the money during closing.

In its closing argument, the State argued:

> A man, by the way, who when caught—get—when he's caught or when they finally search him, what's he have on him? A man with no real job has more cash in his pocket than most people make in a two-week pay period. That's the type of man you're dealing with.

This was the extent of the argument made by the State regarding the money found on Sheffey. Even had counsel presented evidence that the money was the result of gambling winnings, the State could have still made a similar argument regarding the money. Further, given the other evidence presented against Sheffey, including the quantity of drugs found in his room and the garage, Sheffey failed to demonstrate a reasonable probability of a different outcome at trial had counsel investigated and presented evidence regarding gambling winnings. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 22-26 at 3-4.

The Nevada Court of Appeals' rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In an ineffective-assistance-of-counsel case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Id.* at 688. This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

To succeed on a *Strickland* claim based on a failure to investigate, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "an ineffective assistance claim fails" when the petitioner "fails to state what additional information would be gained by the discovery she or he now claims was necessary." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001). In addition, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Id.* (internal quotation marks omitted).

Sheffey first contends trial counsel was deficient because she did not "locate and interview his teenage children, who witnessed the initial search and the detectives['] encounter with his mother." ECF No. 3 at 12. Sheffey does not state, however, "what additional information" would have been uncovered had counsel spoken to his children. *Bragg*, 242 F.3d at 1088. He does not, for example, claim that his children would have contradicted police officers' testimony about the search of the garage or bedroom. Thus, the Nevada Court of Appeals reasonably concluded that Sheffey failed to show prejudice from counsel's alleged failure to interview his children.

Sheffey next argues that counsel was ineffective because she failed to interview "the witnesses in the gas station at the time he was detained." ECF No. 3 at 12. At the post-conviction evidentiary hearing, however, Sheffey's trial counsel testified that her investigator talked to gas station employees and "showed them photos of Mr. Sheffey," but "none of them really remembered—they remembered the police coming and arresting someone. They didn't really remember any details about anything that had happened." ECF No. 22-6 at 7. Sheffey fails to explain why these investigative steps were inadequate. Nor does he state what else counsel could have done to elicit helpful information from the gas station witnesses. Even assuming counsel was deficient for failing to interview these witnesses, Sheffey does not explain what information they would have provided to counsel or how such information favored the defense. It was therefore reasonable for the Nevada Court of Appeals to conclude that Sheffey failed to demonstrate that his counsel performed deficiently or that he suffered prejudice due to

1   the alleged failure to interview the gas station witnesses.

2          Equally unavailing is Sheffey's assertion that counsel was deficient for failing to collect

3   surveillance video from the gas station.  At the post-conviction evidentiary hearing, counsel

4   testified that her "investigator went out multiple times to subpoena the footage, but it was—they

5   no longer had it." *Id*.  Sheffey does not explain what else counsel could or should have done to

6   obtain the surveillance footage.  And he does not say what the footage would have revealed, or

7   how it would have helped his defense.  Thus, the Nevada Court of Appeals reasonably concluded

8   that Sheffey failed to show counsel was deficient or a reasonable probability of a different

9   outcome at trial.

10          Finally, Sheffey faults trial counsel for failing to investigate the source of the money

11   found on his person when he was detained.  According to Sheffey, had counsel made this

12   investigation she would have uncovered evidence that the money came from "legitimate

13   gambling winnings" rather than illegal drug sales, and the State would not have been able to

14   "make extensive argument to the jury regarding the alleged illegal source of the funds." ECF No.

15   3 at 12.  The Nevada Court of Appeals correctly concluded that Sheffey failed to establish a

16   reasonable probability of a different result at trial had counsel presented evidence that the money

17   came from legitimate gambling winnings.

18          Sheffey was charged with two counts of trafficking in a controlled substance in violation

19   of Nev. Rev. Stat. § 453.3385.  The version of that statute in effect at the time of Sheffey's

20   offenses "ma[de] it unlawful to knowingly or intentionally sell *or possess* 'any controlled

21   substance listed in schedule I' and impose[d] different penalties depending on the quantity of the

22   controlled substance involved." *Figueroa-Beltran v. United States*, 467 P.3d 615, 623 (Nev.

23   2020) (emphasis added) (quoting Nev. Rev. Stat. § 453.3385).  There was overwhelming

24   evidence at trial that Sheffey possessed substantial quantities of methamphetamine and heroin—

25   both schedule I controlled substances. *Andrews v. State*, 412 P.3d 37, 37-38 (Nev. 2018).  After

26   the search of the garage turned up methamphetamine and heroin, officers obtained a warrant and

27   searched Sheffey's locked bedroom.  They unlocked the bedroom door using a key recovered

28   from Sheffey.  Sheffey himself testified at trial that this key was "the only key that opened" the

bedroom door.  ECF No. 18-4 at 38.  Once inside the bedroom, officers found large quantities of methamphetamine and heroin.  Given the substantial evidence that Sheffey possessed controlled substances in violation of § 453.3385, there is no reasonable probability that the result of the proceedings would have been different had the jury entertained evidence of a legitimate source for the money. *See Bragg*, 242 F.3d at 1088 ("[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.").

The Nevada Court of Appeals reasonably rejected Sheffey's *Strickland* claim based on counsel's failure to investigate.  Accordingly, he is not entitled to relief on Ground 2.

## C.  Ground 3

In Ground 3, Sheffey claims trial counsel was ineffective because she "failed to adequately communicate" with him "during pretrial preparation." ECF No. 3 at 15.  He alleges that, before trial, counsel visited him only once "for approximately one hour," and that he had three additional conversations with counsel, each lasting "less than five minutes." *Id.*

In affirming the denial of Sheffey's state habeas petition, the Nevada Court of Appeals held:

> Fifth, Sheffey claimed counsel was ineffective for failing to communicate with him.  He claimed counsel only visited him once in the jail for less than an hour and only met with him a few other times for less than five minutes.  And counsel failed to discuss the investigation and pretrial preparations.  Counsel testified at the evidentiary hearing that she met with Sheffey in person and had meetings with him over the phone.  Additionally, she investigated the witnesses recommended by Sheffey and attempted to obtain the surveillance video.  Therefore, Sheffey failed to demonstrate that counsel was deficient.  Further, Sheffey failed to demonstrate a reasonable probability of a different outcome at trial had counsel had further communications with him.  Accordingly, we conclude the district court did not err in denying this claim.

ECF No. 22-26 at 4-5.

The Nevada Court of Appeals' rejection of this claim was neither contrary to nor unreasonable application of clearly established law.  Even if counsel was ineffective for failing to adequately communicate with him, Sheffey fails to establish that the inadequate communication prejudiced him.  Sheffey does not "allege what purpose additional consultation [with counsel] would have served." *United States v. Lucas*, 873 F.2d 1279, 1280 (9th Cir. 1989).

Instead, he simply asserts that "the failure to properly communicate affected the pretrial preparation and investigation of his case." ECF No. 3 at 16. This bare assertion is insufficient to show a reasonable probability that further communications would have produced a different result at trial. Perhaps Sheffey believes that additional consultations would have caused counsel to pursue the lines of inquiry described in Ground 2. But, as explained above, Sheffey offers no basis to conclude that counsel's failure to investigate prejudiced him. Because the Nevada Court of Appeals reasonably rejected Sheffey's *Strickland* claim based on counsel's failure to adequately communicate, he is not entitled to relief on Ground 3.

## IV.    Certificate of Appealability

This is a final order adverse to Sheffey. Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have evaluated the claims in the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (i) whether the petition states a valid claim of the denial of a constitutional right and (ii) whether the court's procedural ruling was correct. *Id.*

None of my rulings in adjudicating Sheffey's petition meets the *Slack* standard. I therefore decline to issue a COA for my resolution of any of Sheffey's claims.

## V.    Conclusion

I THEREFORE ORDER that the petition (ECF No. 3) is **DENIED** in its entirety.

I FURTHER ORDER that a certificate of appealability is **DENIED**.

/ / / /

/ / / /

/ / / /

1    I FURTHER ORDER the Clerk of the Court to substitute Kyle Olsen for respondent

2  Hutchings, enter judgment accordingly, and close this case.

3    Dated: August 4, 2022.

4    _____

5    ANDREW P. GORDON
     UNITED STATES DISTRICT JUDGE